September 30, 2010

The Honorable Rob Eissler
Chair, Committee on Public Education
Texas House of Representatives
Post Office Box 2910
Austin, Texas   78768-2910

Opinion No.  GA-0807

Re:  Meaning of "normal course load" as used in section 42.159 of the Education Code for the purposes of determining whether electronic courses provided by school districts fall under the funding method of section 42.159(b) or section 42.159(d) (RQ-0866-GA)

Dear Representative Eissler:

Section 42.159 of the Education Code authorizes allotments for a successfully completed qualifying electronic course[1] provided by a school district or an open-enrollment charter school through the State Virtual School Network ("SVSN"), which is established under chapter 30A of the Education Code. *See* TEX. EDUC. CODE ANN. § 42.159(a)(3), (b), (d) (West Supp. 2010); *see also id.* §§ 30A.001–.155 (providing for SVSN). You explain that subsection 42.159(b) and subsection 42.159(d) provide different funding methods depending "on whether . . . a course is 'part of a normal course load' . . . or 'exceeds a normal course load.'"[2] Thus, you ask about "the meaning of 'normal course load' for the purposes of determining whether a course falls under the funding method of 42.159(b) or 42.159(d)." Request Letter at 1.

To provide a context for your question and discussion of Education Code section 42.159, we begin with an overview of chapter 42. Chapter 42 generally provides for the funding of school districts through the Foundation School Program ("FSP"). *See generally* TEX. EDUC. CODE ANN. §§ 42.001–.457 (West 2006 & Supp. 2010). The cost of the FSP is financed with local school district taxes, available school fund distributions, and state appropriations. *Id.* § 42.251(b) (West 2006). The FSP, generally speaking, consists of two funding components or "tiers" that provide for (1) basic educational programs and substantially equal access to funds to provide enriched educational programs above the basic level, and (2) educational facilities. *See id.* § 42.002(b). "The

---

[1]*See* TEX. EDUC. CODE ANN. § 42.159(a)(1) (West Supp. 2010) ("'Electronic course' means a course that is a semester in length."); *id.* § 30A.001(4)(B), (C) (defining "Electronic course" as a course in which, among other items, "a student and teacher are in different locations for a majority of the student's instructional period" and "most instructional activities take place in an online environment").

[2]Request Letter at 1 (*available at* http://www.texasattorneygeneral.gov).

sum of the basic [state] allotment under Subchapter B and the special [state] allotments under Subchapter C . . . constitute the tier one allotments." *Id.* § 42.251(a) (footnotes omitted).[3]

With this background, we turn to section 42.159, which is a part of subchapter C and provides allotments to school districts for courses offered through the SVSN. *See id.* § 42.159 (West Supp. 2010). Subsections 42.159(b) and (d) provide in pertinent part:

> (b) For each student who successfully completes an electronic course that satisfies a curriculum requirement for graduation adopted under Section 28.025 [High School Diploma and Certificate; Academic Achievement Record], and is provided through the state virtual school network *as part of a normal course load*:
>
> (1) the school district or open-enrollment charter school that provided the course is *entitled to an allotment of $400*; and
>
> (2) the school district or open-enrollment charter school in which the student is enrolled is *entitled to an allotment of $80* to reimburse the district or school for associated administrative costs.
>
> . . . .
>
> (d) For each student who successfully completes an electronic course that satisfies a curriculum requirement for graduation adopted under section 28.025 [High School Diploma and Certificate: Academic Achievement Record], is provided through the state virtual school network, and *exceeds a normal course load*, . . . the school district or open-enrollment charter school that provided the course *may be entitled to an allotment* in an amount determined by the commissioner *based on the amount of funds appropriated* for purposes of this subsection.

*Id.* § 42.159(b), (d) (emphasis added). With respect to a course that "exceeds a normal course load," subsection 42.159(d), (1) provides for unspecified allotments, and (2) limits the allotments to funds specifically appropriated by the Legislature for such a purpose. *See id.* § 42.159(d). In contrast, with respect to a course that is "part of a normal course load," subsection 42.159(b), (1) provides for fixed allotments of $400 and $80, and (2) does not limit the allotments to specifically appropriated funds. *See id.* § 42.159(b).

Subsection 42.159(a) defines "normal course load" as "the *number of classes or credit hours* generally required to be taken by a student *to generate the full amount of funding provided under this*

---

[3]Tier two funding for educational facilities does not appear to be relevant to your question.

*chapter* [42] for a student in average daily attendance, as determined by the commissioner [of Education]." *Id.* § 42.159(a)(2) (emphasis added). As you note, however, the "Education Code does not contain a definition of the number of classes or credit hours generally required by a student to generate the full amount of funding." Request Letter at 2. You suggest that based on an existing rule of the Commissioner of Education (the "Commissioner") relating to attendance accounting, four hours per day of course load generates the full amount of chapter 42 funding and should be "the basis for [the] definition of 'normal course load.'" *Id.*

The Legislature may, of course, provide that four hours per day of course load is "the number of classes or credit hours generally required to be taken by a student to generate the full amount of funding provided under this chapter [42]" for the purposes of section 42.159. However, in the absence of legislative action defining "normal course load" based on a four-hour course load, we cannot say definitively that the four-hour course load should be the basis of the definition in view of the Commissioner's authority under and with respect to section 42.159. The "[c]onstruction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993); *accord First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008).

In section 42.159(a), the Legislature has granted the Commissioner the authority to specifically determine the meaning of "normal course load" by providing that "'[n]ormal course load' means the number of classes or credit hours generally required to be taken by a student to generate the full amount of funding . . . , *as determined by the commissioner*." TEX. EDUC. CODE ANN. § 42.159(a)(2) (West Supp. 2010) (emphasis added); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (West 2005) ("Word and phrases shall be read in context and construed according to the rules of grammar and common usage."); *Ludwig v. State*, 931 S.W.2d 239, 241 (Tex. Crim. App. 1996) (stating rule of construction that "a comma separating a modifying clause in a statute from the clause immediately preceding is an indication that the modifying clause was intended to modify all the preceding clauses and not only the last antecedent"). Additionally, the Legislature has specifically directed the Commissioner in section 42.159(h) to "adopt rules necessary to implement this section [42.159]." TEX. EDUC. CODE ANN. § 42.159(h) (West Supp. 2010).[4]

The Commissioner and agency staff comprise the Texas Education Agency (the "TEA"). *Id.* § 7.002(a) (West 2006); *see also id.* § 7.055(b)(2) (providing that the Commissioner serves as executive officer of the TEA and as executive secretary of the State Board of Education). TEA rules require public schools to "maintain records to reflect the average daily attendance (ADA) for the allocation of Foundation School Program (FSP) funds and other funds allocated by the" TEA. 19 TEX. ADMIN. CODE § 129.21(a) (2010) (Tex. Educ. Agency, Requirements for Student Attendance Accounting for State Funding Purposes). Section 129.21(h) of the TEA rule to which you

---

[4]The Commissioner is also charged with administering Education Code chapter 30A. The Legislature has (1) directed the Commissioner to administer the SVSN and ensure the quality of and equitable access to the education provided through the network, and (2) authorized the Commissioner to adopt rules to implement chapter 30A. *See* TEX. EDUC. CODE ANN. § 30A.051 (West Supp. 2010).

specifically refer provides that "[a] student must be enrolled for at least *two hours of instruction* to be considered in membership for one *half day*, and for at least *four hours of instruction* to be considered in membership[5] for one *full day*." *Id.* § 129.21(h) (emphasis and footnote added). The TEA notes that the preexisting section 129.21(h) four-hour definition "relates to scheduled minutes of instruction and not to a number of 'classes' or 'credits hours'" and that "[t]here is no existing standard by which a 'course' or 'credit' is translated into a uniform number of minutes of instruction for state funding purposes."[6] The TEA has instead "implemented Section 42.159 by considering a 'normal course load' to be the number of credits necessary to graduate from high school in four years under the state's recommended high school program, which is seven credits per year." TEA Brief at 3;[7] *see also* TEX. EDUC. CODE ANN. § 28.025(a) (West Supp. 2010) (providing that "[t]he State Board of Education by rule shall determine curriculum requirements for the minimum, recommended, and advanced high school programs that are consistent with the required curriculum"); 19 TEX. ADMIN. CODE § 74.12 (b)–(c) (2010) (Tex. Educ. Agency, Recommended High School Program) (providing for core requirement credits for graduation and recommended components and credits for each year).

Because the Legislature has charged the TEA with administering section 42.159, a court will uphold the TEA's interpretation "'so long as the construction is reasonable and does not contradict the plain language of the statute.'" *First Am. Title Ins. Co.*, 258 S.W.3d at 632 (considering the Comptroller of Public Account's interpretation of a tax provision) (quoting *Tarrant Appraisal Dist.*, 845 S.W.2d at 823); *see also* Tex. Att'y Gen. Op. No. GA-0458 (2006) at 2 ("In the event that a state administrative agency has construed a statute that it is charged with enforcing, as in the instant case, we will accept that construction, so long as the construction is reasonable and does not contradict the statute's plain language.") (accepting Texas Lottery Commission's definition of "group" in the Bingo Enabling Act).

The TEA's definition of "normal course load" does not appear unreasonable, and it does not contradict the plain language of the statute. First, the TEA's definition appears consistent with the section 42.159 definition of "normal course load," which is in terms of the "number of classes or credit hours" generally required to be taken to generate full funding under chapter 42. *See* TEX.

---

[5] A TEA handbook defines "membership" as follows: "The total number of public school students who were reported in membership as of the October snapshot date (the last Friday in October) at any grade . . . . Membership is a slightly different number from enrollment, because it does not include those students who are served in the district for fewer than 2 hours per day." TEXAS EDUCATION AGENCY, 2009-2010 STUDENT ATTENDANCE ACCOUNTING HANDBOOK, VERSION 2, at 236 (Glossary) (Aug. 13, 2009) (*available at* http://www.tea.state.tx.us/index2.aspx?id=180) (last visited Sept. 27, 2010).

[6] Brief from David Anderson, General Counsel, Texas Education Agency, at 2–3 (Apr. 5, 2010) (on file with the Opinion Committee) [hereinafter TEA Brief].

[7] We are informed that the TEA "anticipates filing a proposed rule consistent with" this implementation as communicated to Legislators by a letter dated September 1, 2009. TEA Brief at 3; *see also id.* at Exhibit A (Letter from Robert Scott, Commissioner of Education, to Honorable Florence Shapiro and Honorable Scott Hochberg, at 1–2 (Sept. 1, 2009)); TXVSN FREQUENTLY ASKED QUESTIONS, General Questions, 10. How is a "normal course load" defined? (*available at* http://www.txvsn.org/TxVSNFAQ.aspx) (last visited Sept. 27, 2010).

EDUC. CODE ANN. § 42.159(a)(2) (West Supp. 2010). And, as you note, the Education Code does not expressly provide for the number of classes or credit hours to generate the full chapter 42 funding. Request Letter at 2. Second, based on the language in a closely related provision in Education Code chapter 30A establishing the SVSN, the TEA's definition appears consistent with the meaning the Legislature most likely intended for "normal course load." Section 30A.155 addresses fees that a school district may or must charge a student enrolled in an electronic course provided through the SVSN and funded under subsection 42.159(d). *See* TEX. EDUC. CODE ANN. § 30A.155 (West Supp. 2010) (providing for fees); *see also id.* § 42.159(h) (providing that the Commissioner's adopted rules must include provisions requiring a school district or open-enrollment charter school that receives funding under section 42.159(d) to reduce or limit the fees charged under section 30A.155). A school district is permitted to charge a fee if, among other things, the student "is enrolled in a *course load greater than that normally taken by students in the equivalent grade level . . . .*" *Id.* § 30A.155(a), (c-1) (emphasis added).

Accordingly, because the TEA is the administrative agency expressly charged with administering section 42.159, and its construction of the definition of the term "normal course load" in terms of seven credit hours per year does not appear unreasonable and is not inconsistent with the term's statutory definition, we cannot say that the definition of "normal course load" should or must be based on a four-hour course load.

## S U M M A R Y

Section 42.159 of the Education Code provides allotments to school districts or open-enrollment charter schools for successfully completed courses offered through the State Virtual School Network. The Texas Education Agency (the "TEA") is the administrative agency expressly charged with administering Education Code section 42.159. The TEA's definition of the term "normal course load" in section 42.159 as seven credit hours per year does not appear unreasonable and is not inconsistent with the term's statutory definition. Accordingly, this office cannot say that the definition of "normal course load" should or must be based on a four-hour course load.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee